**FILED**

September 15, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____Michael Trujillo_____

DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **JAMES EVERETT SHELTON** | : | |
| | : | |
| | : | Case No. 3:22-cv-00202 |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **OMEGA CAPITAL FUNDING INC., &** | : | |
| **SEDRICK AMBROISE** | : | |
| | : | |
| **Defendant** | : | |

<u>**PLAINTIFF'S FIRST AMENDED COMPLAINT:**</u>

Plaintiff, JAMES EVERETT SHELTON, brings this action against Defendant, OMEGA CAPITAL FUNDING INC. and SEDRICK AMBROISE, and alleges based on personal knowledge and information, and belief, as follows:

<u>**Preliminary Statement**</u>

**1.**     As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

**2.**     Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that OMEGA CAPITAL FUNDING INC. sent a series of telemarketing calls and text messages for the purposes of commercial solicitation by contacting Plaintiff's cellular telephone number listed on the National Do-Not-Call Registry, which is prohibited by the TCPA.

1

**3.**     Upon information and belief, OMEGA CAPITAL FUNDING INC. is owned, operated, and controlled by SEDRICK AMBROISE.

**4.**     Plaintiff never consented to receive any of these phone calls or text messages, which were placed to him for telemarketing purposes.

## PARTIES

**5.**     The Plaintiff is JAMES EVERETT SHELTON ("Plaintiff"), a natural person, and was the individual who received the alleged phone calls in this case on his private mobile telephone, and was physically present in the Western District of Texas during all of the phone calls as alleged in this case.

**6.**     Defendant OMEGA CAPITAL FUNDING INC. ("Omega" or "Omega Capital Funding") is a corporation organized and existing under the laws of New York, and can be served at its principal place of business located at 6 Stacy Court, Shirley, NY 11967. Omega markets and sells, inter alia, loans and business financing to people in Texas, and engages in telemarketing into this district, as it did with the Plaintiff.

**7.**     Defendant SEDRICK AMBROISE ("Mr. Ambroise") is an adult individual and the CEO, Managing Director, Lead Underwriter, and primary owner of OMEGA CAPITAL FUNDING INC. who can be served at his residential address, 6 Stacy Court, Shirley, NY 11967.

## JURISDICTION & VENUE

**8.**     **Subject-Matter Jurisdiction:** This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 556 U.S. 368, 372 (2012).

**9.**     **Personal Jurisdiction:** This Court has specific personal jurisdiction over the Defendants because they have repeatedly placed calls, text messages, and e-mails to people located in the

State of Texas, and derive revenue from Texas residents, and they sell goods and services to people in Texas, including the Plaintiff. This Court has supplemental subject matter jurisdiction over Plaintiffs claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff; adds little complexity to the case.

**10.**     **Venue:** Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1)-(2) in that Defendants conduct business in, and a substantial part of the events giving rise to Plaintiff's claims occurred in El Paso County, Texas, and Plaintiff was physically present in the Western District of Texas (in El Paso County) for all calls as alleged in this Complaint. Defendants conduct business in this judicial district by calling people in Texas.

### Statutory Background
### The Telephone Consumer Protection Act

**11.**     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do-Not-Call Registry

**12.**     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

**13.**     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

**14.**     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

**15.**     A text message is considered a "call" under the TCPA. *Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663 (2016).

### The Texas Business and Commerce Code 305.053:

**16.**     The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

**17.**     The Plaintiff may seek damages under this Texas law for violations of 47 U.S.C. § 227 or subchapter A and seek $500 in statutory damages or $1,500 for willful or knowing damages.

### The Texas Business and Commerce Code § 302.101

**18.**     The Texas Business and Commerce code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to people located in the State of Texas. See Texas Business and Commerce Code § 302.101(a).

**19.**     The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, as well as court costs, investigation costs, deposition expenses, and witness fees. *See* §302.101(a) and (d).

**20.**     Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by

4

Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §
302.303.

## FACTUAL ALLEGATIONS:

**21.**     Defendants provide loans and business financing services to people in Texas and
nationwide.

**22.**     Defendants routinely violate the TCPA as a part of its business model and knowingly and
willfully commit TCPA violations.

**23.**     At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone
line, with phone number (484) 626-3942.

**24.**     At all times material hereto, Plaintiff was the subscriber of the telephone number (484)
626-3942 and paid his cell phone bill through T-Mobile.

**25.**     All calls to Plaintiff described herein were to that number.

**26.**     It has been assigned to Plaintiff since 2014.

**27.**     Plaintiff's phone number is his private cell phone number and is used by Plaintiff solely.

**28.**     Plaintiff's phone number is registered with T-Mobile as his personal telephone number
and not as a business telephone number.

**29.**     At all times material hereto when the calls as alleged in this case were made to Plaintiff,
Plaintiff's telephone number was not held out by Plaintiff as the contact telephone number for
any business.

**30.**     Plaintiff's personal cellular telephone number is a "residential" telephone number that he
uses for various personal, family, and household purposes, such as sending and receiving emails,
timing food when cooking, sending and receiving text messages, calling friends and family while

at home, using the phone's alarm function to wake up in the morning, and for navigation purposes.

**31.**     Plaintiff's personal cellular telephone number (484) 626-3942 has been registered on the National Do-Not-Call Registry since June 26, 2015.

**32.**     Plaintiff registered his phone number on the Do Not Call Registry in order to obtain solitude from invasive and harassing telemarketing calls and text messages. The telemarketing calls prevented Plaintiff from using his phone for legitimate purposes.

**33.**     The Plaintiff has received at least seven (7) telemarketing calls between May 16, 2022 and May 27, 2022 to his cell phone number 484-626-3942, without his prior express written consent and not related to an emergency purpose, promoting working capital and/or financing services from Defendants.

**34.**     **Call 1:** On May 16, 2022 at 10:39 AM, the Plaintiff received a telemarketing call which displayed on Plaintiff's caller identification as (484) 853-5137.

**35.**     On information and belief, the area code on the caller ID was spoofed or selected by contrivance in order to confuse the Plaintiff about the origin of the call.

**36.**     Plaintiff answered.

**37.**     The caller identified himself as "Brian Mohen" with Omega Capital Funding.

**38.**     Defendants' representative pitched Plaintiff on a business loan.

**39.**     Plaintiff hung up the phone without giving Defendants permission to call back. The Plaintiff told Mr. Mohen he would call back if he had any questions or was interested in the Defendants' services.

**40.**     As a direct result of the first telemarketing call described above, at 10:44 AM, Plaintiff received an e-mail from "Brian Mohen", Brian@omegacapfund.com, an "Account Manager"

with Omega Capital Funding, attempting to get the Plaintiff to fill out an application with

Defendants for financing. *See* Exhibit "1", a true and correct copy of said e-mail.

41.     **Call 2:** On May 16, 2022 at 12:59 PM, Plaintiff received a telemarketing call which

displayed on Plaintiff's caller ID as (610) 776-9909.

42.     Plaintiff answered and was connected with a male representative who said he was calling

with Omega Capital Funding.

43.     The call was disconnected after 12 seconds.

44.     **Call 3:** On May 16, 2022 at 12:59 PM, Plaintiff received a telemarketing call which upon

information and belief was sent by Defendants, which displayed on Plaintiff's caller ID as (610)

422-3525.

45.     The call lasted one (1) second.

46.     **Call 4 (first text message)**: On May 19, 2022 at 7:47 AM, Plaintiff received a text

message from phone number (631) 857-4734. The text message read:

> "Hey James,
>      It's Jack from Omega, Get me over the business bank statements for February,
> March, April, May month to date to Jack@omegacapfund.com. Once those hit my inbox
> I'll have the proposals generated within 2 hours. Base me on the merit of my offers, I
> know you're going to be nothing less than impressed."

47.     On May 19, 2022 at 10:40 AM, Plaintiff received an e-mail from "Michael Milici",

Michael@omegacapfund.com, an "Account Manager" with Omega Capital Funding, attempting

to get Plaintiff to send Defendants business bank statements in order for Defendants to provide

financing services to Plaintiff.

48.     **DNC Request:** On May 19, 2022 at 10:47 AM, Plaintiff responded to Mr. Milici's e-mail

and wrote "Can you guys stop calling me, my phone is getting flooded." *See* Exhibit "2".

**49.**   **<u>DNC Request Received & Acknowledged:</u>** On May 19, 2022 at 10:51 AM, Defendants'

representative, Mr. Milici, e-mailed Plaintiff acknowledging his Do-Not-Call request, writing

"No problem the next time you hear from us we will have 75k for you, we just need the bank

statements." *See* Exhibit "3", a true and correct copy of said e-mail.

**50.**   Plaintiff believes, and therefore avers, that Defendants did not train their representatives

to honor and abide by DNC requests made by consumers.

**51.**   It is evidently Defendants' business practice to continue placing sales calls to consumers

who have already made a DNC request. Such conduct violates the TCPA and its implementing

regulations, 47 CFR § 64.1200(d)(3)(requiring telemarketers to honor and record DNC requests

when made).

**52.**   **Call 5 (second text message):** On May 20, 2022 at 9:16 AM, Plaintiff received another

text message from phone number (631) 857-4734. The text message read:

> "Hey James,
> It's Jack from Omega. I have absolutely no desire to chase you down, all I need from you
> are statements for February, March, April, May month to date. Sometime between now
> and Monday morning send me the statements and Month to date and I'll have it
> underwritten with offers out in front of you by Lunch Monday. We move fast in this
> industry, if you aren't really trying to get  the 75k for the truck just let me know and we
> can revisit this when you actually need it."

**53.**   True and correct screenshots of the aforementioned text messages are attached as Exhibit

"4 to this Complaint.

**54.**   **Call 6 (third text message):** On Friday, May 27, 2022 at 7:24 AM, Plaintiff received a

text message from phone number (848) 248-3345. The text message read:

> "Hey this is Jack from Omega, following up for the business bank statements for
> February, March, April, May month to date.
>
> Once those hit my inbox (jack@omegacapfund.com) I'll get you into underwriting. It'll
> take roughly 2 hours to get a proposal in front of you that I know you're going to be
> nothing less than impressed with."

8

**55.**    **Call 7 (fourth text message):** On Friday, May 27, 2022 at 7:49 AM, Plaintiff received

another text message from phone number (848) 248-3345. The text message read:

"James I'm not trying to waste my time here, are you still looking for the 75k?"

**56.**    True and correct screenshots of the third and fourth text messages as described above are

attached as Exhibit "5" to this Complaint.

**57.**    Table A below is a summary of the phone calls and text messages sent by Defendants to

the Plaintiff's cell phone number:

| Call Number | Date: | Time: | Caller ID: | Notes: |
|---|---|---|---|---|
| 1 | 5/16/2022 | 10:39 AM | 484-853-5137 | Telemarketing Call lasted 3 minutes. |
| 2 | 5/16/2022 | 12:59 PM | 610-776-9909 | Call lasted 12 seconds. |
| 3 | 5/16/2022 | 12:59 PM | 610-422-3525 | Call lasted 1 second. |
| 4 | 5/19/2022 | 7:47 AM | 631-857-4734 | Text Message: "Hey James, It's Jack from Omega, Get me over the business bank statements for February, March, April, May month to date to Jack@omegacapfund.com. Once those hit my inbox I'll have the proposals generated within 2 hours. Base me on the merit of my offers, I know you're going to be nothing less than impressed." |
| DNC Request | 5/19/2022 | 10:47 AM | DNC E-mail | DNC Email sent to Michael Milici |
| 5 | 5/20/2022 | 9:16 AM | 631-857-4734 | Text Message: "Hey James, It's Jack from Omega. I have absolutely no desire to chase you down, all I need from you are statements for February, March, April, May month to date. Sometime between now and Monday morning send me the statements and Month to date and I'll have it underwritten with offers out in front of you by Lunch Monday. We move fast in this |

| | | | | industry, if you aren't really trying to get  the 75k for the truck just let me know and we can revisit this when you actually need it." |
|---|---|---|---|---|
| 6 | 5/27/2022 | 7:24 AM | 848-248-3345 | Text Message: "Hey this is Jack from Omega, following up for the business bank statements for February, March, April, May month to date.<br><br>Once those hit my inbox (jack@omegacapfund.com) I'll get you into underwriting. It'll take roughly 2 hours to get a proposal in front of you that I know you're going to be nothing less than impressed with." |
| 7 | 5/27/2022 | 7:49 AM | 848-248-3345 | Text Message: "James I'm not trying to waste my time here, are you still looking for the 75k?" |

**58.**     Plaintiff did not want a loan or any financing.

**59.**     Defendants did not have the Plaintiff's prior express written consent to send any of these text messages or phone calls.

**60.**     Prior to these unsolicited telephone communications, the Plaintiff has never done any business with Defendants and Plaintiff never provided Defendants with his cellular telephone number.

**61.**     On June 5, 2022, Plaintiff conducted a search for Defendants on https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp, and Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to people in Texas. Plaintiff was physically located in the Western District of Texas at the time of every call as alleged in this case.

**62.**     To the extent Defendants contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that

such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendants can show that they had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff.

63.    Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

64.    Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal purposes.

65.    These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

66.    Defendants are not an organization exempt from the TCPA.

67.    Defendants' calls to Plaintiff were "telephone solicitations" as defined by the TCPA.

68.    Defendants' calls to Plaintiff were "unsolicited advertisements" as defined by the TCPA.

69.    Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because of the text message and telephone call notifications, and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff. The calls caused

Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

70.     In summary, Plaintiff received seven (7) telemarketing calls from Defendants to Plaintiff's personal, residential cell phone number which is registered on the National Do-Not-Call Registry.

### Defendants Made Telemarketing Calls to Plaintiff without a DNC Policy

71.     Pursuant to 47 CFR § 64.1200(d)(1), a telemarketer is required, upon request, to send a consumer a written copy of their company Do-Not-Call Policy.

72.     Upon information and belief, at all times material hereto, Defendants did not have a "Do-Not-Call Policy" in place.

73.     On June 5, 2022 at 4:16 PM, Plaintiff emailed Defendants and asked for a copy of their Do-Not-Call policy. *See* Exhibit "6", a true and correct copy of said e-mail to Defendants.

74.     This e-mail was successfully delivered to Defendants.

75.     Defendants failed and/or refused to provide any "Do-Not-Call Policy" to Plaintiff.

76.     Plaintiff avers that this is because Defendants did not (and do not) \have a DNC policy in place.

77.     All of the calls in this case occurred when Defendants did not have a written policy, available on demand, for maintaining a do-not-call list.

### The TCPA Imposes Personal Liability on Individuals Who Participate In or Commission Telemarketing Calls

78.     Under the TCPA, an individual such as Mr. Ambroise may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be

deemed to be the act, omission, or failure of such carrier or user *as well as of that person*. 47 U.S.C. § 217 (emphasis added).

79.     When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, *e.g.*, *Jackson's Five Star Catering, Inc., v. Beason,* 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

80.     Mr. Ambroise is personally liable under the "participation theory" of liability because he had direct, personal participation in the conduct that violated the TCPA, or knowingly authorized such conduct. See, e.g., *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV, 2015 WL 3644598, at *3 (S.D. Fla. June 10, 2015).

81.     Mr. Ambroise controls Omega's marketing program.

82.     Mr. Ambroise knew of Omega's TCPA violations, and directed employees and/or agents of Omega to continue making those violations.

83.     This is because Mr. Ambroise authorized and oversaw each of Omega's telemarketing processes and calls which were made on behalf of Omega.

84.     Mr. Ambroise knew, or should have known, that Plaintiff's telephone number was on the National Do-Not-Call Registry long before the phone calls and text messages were sent, and despite this fact, Mr. Ambroise made the decision to direct his agents and/or employees to call the Plaintiff's cell phone number without his prior express written consent.

85.     Mr. Ambroise makes the day-to-day decisions for Omega.

13

86.     Mr. Ambroise made the decision to contact telephone numbers listed on the National Do-Not-Call Registry, including the Plaintiff's number, or in the alternative, Mr. Ambroise made the decision *not* to scrub numbers listed on the Do-Not-Call Registry from Omega's calling lists.

87.     Furthermore, Mr. Ambroise is also personally liable because he was responsible for ensuring Omega's agents' and/or employees' TCPA compliance.

88.     Upon information and belief, Mr. Ambroise failed to train his agents and representatives to properly honor and comply with "Do-Not-Call" requests from consumers, such as Plaintiff.

89.     Defendant Mr. Ambroise refuses to take any action to stop or curtail the unlawful sales practices and contacting numbers listed on the National Do-Not-Call Registry because these practices benefit Defendant Mr. Ambroise financially.

"If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v. Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir. 1985) The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct. . . .or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5' Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

Quoting Texas v. American Blastfax:

The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

14

To be clear, the Court finds Greg and Michael Home were the "guiding spirits" and the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Home had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is far more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Home are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

90.     The Same Court held that corporate officers were also personally liable for DTPA violations:

> The State contends Greg and Michael Home are personally liable for any DTPA damages because they were solely responsible for the violating conduct ..... For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation ...... Accordingly, the Court finds defendants American Blastfax, Inc., Greg Home and Michael Home are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001).

91.     Upon information and belief, Defendant Mr. Ambroise operates Omega Capital Funding Inc. out of his personal residence located at 6 Stacy Court, Shirley, NY 11967. Employees of the company come to Mr. Ambroise's house to work, and place illegal telemarketing solicitation phone calls from Mr. Ambroise's  house to DNC-listed numbers without consent.

92.     Defendant Mr. Ambroise is not merely a bystander. He is the mastermind that planned, directed, initiated, and controlled the illegal telemarketing program on behalf of Omega.

**93.**     Additionally, Mr. Ambroise contacted the Plaintiff via e-mail on at least five (5) occasions in May, 2022 for marketing purposes, in connection with the telemarketing calls placed to Plaintiff on behalf of Defendants. *See* Exhibit "7".

**94.**     One of the e-mails, sent on May 14, 2022 at 2:23 PM, asked Plaintiff "Should I stop bothering you?" This question itself confirms that Defendants knew, or should have known, that they were bothering the Plaintiff and were contacting him without his consent for the purposes of telemarketing.

**95.**     Defendant Mr. Ambroise approved the telemarketing scripts, signed the contacts, paid commissions for the illegal behavior, and directed the illegal calls to be made for his financial benefit.

**96.**     Defendants Mr. Ambroise should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

**97.**     Defendant Mr. Ambroise should be held liable because to do otherwise would simply allow him to dissolve Omega and set up a new corporation and repeat their conduct. This would result in both the TCPA and DTPA being unenforceable.

## Violations of the Texas Business and Commerce Code 305.053

**98.**     The actions of the Defendants violated the Texas Business and Commerce Code 305.053 by placing telemarketing calls to a residential phone which violate 47 U.S.C. §227(c). The calls by the Defendants violated Texas law by sending marketing phone calls to a residential number on the National Do-Not-Call Registry which violate 47 U.S.C. §227(c)(5) and 47 C.F.R. § 64.1200(d).

**Violations of the Texas Business and Commerce Code §302.101**

**99.**     The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to person physically located in the State of Texas without having a registration certificate and bond on file with the Texas Secretary of State.

**100.**     Under Texas Business and Commerce Code § 302.302, Plaintiff is entitled to seek damages of up to $5,000 per violation of §302.101.

**Causes Of Action**

**Count One:**
(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227(c) et seq.)

**101.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**102.**     Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

**103.**     Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500.00 per call.

**104.**     Plaintiff was further statutorily damaged because Defendants willfully and/or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

**105.**     As a result of Defendants' and Defendants' agent's violations of 47 U.S.C. §227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks for himself $500.00 in statutory damages, or $1,500.00 if trebled as permitted by statute, for each and every violation, pursuant to 47 U.S.C. §227(c)(3)(F).

**106.**     Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting

such conduct in the future.

## Count Two
(Violation of the TCPA's Implementing Regulations,
"Do Not Call Policy" Requirement, 47 C.F.R. 64.1200(d)(1))

**107.**   Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

**108.**   Defendants failed and/or refused to provide Plaintiff with a copy of their Do-Not-Call

Policy, after Plaintiff requested it in writing on June 5, 2022 via e-mail.

**109.**   Defendants sent seven (7) telemarketing calls to the Plaintiff without having a Do-Not-

Call Policy or Do-Not-Call procedures in place during the calls.

**110.**   As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR §

64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages, pursuant to the implied

private right of action.

**111.**   Plaintiff was statutorily damaged one (1) time under 47 U.S.C. § 227(c)(3)(F) and 47

C.F.R. § 64.1200(d)(1) by the Defendants when they failed and/or refused to provide Plaintiff

with a copy of Defendants' Do-Not-Call policy, in the amount of $500.00.

**112.**   Plaintiff was further statutorily damaged because Defendants willfully and/or knowingly

violated this subsection of the TCPA and its implementing regulations.

**113.**   As a result of Defendants' and Defendants' agents' knowing and/or willful violation of

47 CFR § 64.1200(d)(1), Plaintiff seeks for himself $1,500.00 in trebled statutory damages, as

permitted under U.S.C. § 227(c)(5) for this willful and/or knowing violation.

## Count Three

## (Violations of the Texas Business and Commerce Code 305.053)

114.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

115.     The foregoing acts and omissions of Defendants and/or its affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 305.053, by making non-emergency telemarketing sales calls to Plaintiff's residential and personal telephone number without his prior express consent in violation of 47 U.S.C. §227 et seq. The Defendants violated 47 U.S.C. §227(c) and 47 C.F.R. § 64.1200(d)(3) by calling Plaintiff's number more than two (2) times in a twelve (12) month span for sales purposes, which is on the National Do-Not-Call Registry, and by failing to record and honor Plaintiff's "Do-Not-Call" request.

116.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. Texas Business and Commerce Code 305.053(b).

117.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing and/or willful violation. Texas Business and Commerce Code 305.053(c).

<u>**Count Four**</u>

<u>**(Violations of The Texas Business and Commerce Code 302.101)**</u>

118.     Plaintiff incorporates the foregoing allegations as if set forth herein by reference each and every allegation set forth in the preceding paragraphs.

119.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making non-registered solicitation calls to Plaintiff's personal cellular telephone number without his prior express written consent.

120.     Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing and/or willful violation. Texas Business and Commerce Code 302.302.

19

**121.**   Plaintiff is entitled to an award for all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, and witness fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff James Everett Shelton prays for judgment against the Defendants, jointly and severally, as follows:

A.   Leave to amend this Complaint to name additional DOES as they are identified and to conform to the evidence presented at trial;

B.   A declaration that actions complained of herein by Defendants violated the TCPA and Texas state law;

C.   An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

On Count I:

D.   For awards of $500 for each negligent violation as set forth in Counts I-II.

E.   For awards of $1,500 for each knowing and/or willful violation as set forth in Counts I-II.

On Count III:

F.   An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

On Count IV:

G.   An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

### **Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: September 15, 2022

James Everett Shelton
*Plaintiff, Pro Se*
316 Covered Bridge Road
King of Prussia, PA 19406
Phone: 484-626-3942
Jeshelton595@gmail.com

# EXHIBIT 1

 Gmail                                              **Jamie Shelton <jeshelton595@gmail.com>**

---

## We Spoke Earlier About Funding
1 message

---

**Brian P Mohen** <Brian@omegacapfund.com>                        Mon, May 16, 2022 at 10:44 AM
To: "jeshelton595@gmail.com" <jeshelton595@gmail.com>

Dear James,

Thank you for the time today.

All we will need to get started are the February, March and April bank statements and the May Month to Date Bank Transactions. As the largest Direct Lender in the country, we eliminate the additional expense of third party originated capital and provide you with the optimal capital balances, assistance with cash flow evaluation, and premier capital positions.

In the meantime, please forward the enclosed application See link here·  **Completed Application (filled out and signed online) Click Here for Online Application, (PDF version also attached if you need to print it to fill it out.)**

At Omega Capital Funding, we work with many businesses around the country to provide them with the capital they need. We are the largest DIRECT LENDER for unsecured financing. With a minimal amount of paperwork from you, within 48 hours I can get you the funding you need. I will pledge to you, in advance, that my rates and terms will be the best in the industry. We're a total financial warehouse with every single financial option available for business owners.

## You can fax it to 631-730-8115 or e-mail it to **Brian@omegacapfund.com**

As soon as I have options for you, I will give you a call to discuss. If you have any questions at all, I can be reached at my cell (516) 688-5660.

I'll be in touch.

Regards,

Brian Mohen

*Managing Director of Funding*

 Omega Capital Funding

www.omegacapfund.com

P: 631-714-6809

F: 631-730-8115631

# EXHIBIT 2

 **Gmail**

Jamie Shelton <jeshelton595@gmail.com>

## statements

2 messages

**Michael Milici** <Michael@omegacapfund.com>                                    Thu, May 19, 2022 at 10:39 AM
To: "jeshelton595@gmail.com" <jeshelton595@gmail.com>

Hello James I am working with Brian on your file all we need to move forward is 4 months including May month to date of
business bank statements.


# Michael Milici

*Account Manager*


Omega Capital Funding

www.omegacapfund.com

P: 631-714-6805

C: 516-852-5528

F: 631-730-8115631


**James Shelton** <jeshelton595@gmail.com>                                       Thu, May 19, 2022 at 10:47 AM
To: Michael Milici <Michael@omegacapfund.com>

Can you guys stop calling me, my phone is getting flooded.

Sent from my iPhone

> On May 19, 2022, at 10:40 AM, Michael Milici <Michael@omegacapfund.com> wrote:

> [Quoted text hidden]

# EXHIBIT 3

 Gmail

**Jamie Shelton <jeshelton595@gmail.com>**

___

## (no subject)
1 message

___

**Michael Milici** <Michael@omegacapfund.com>
To: "jeshelton595@gmail.com" <jeshelton595@gmail.com>

Thu, May 19, 2022 at 10:51 AM

No problem the next time you hear from us we will have 75k for you, we just need the bank statements.

# Michael Milici

*Account Manager*

Omega Capital Funding

www.omegacapfund.com

P: 631-714-6805

C: 516-852-5528

F: 631-730-8115631

# EXHIBIT 4

7:45

+1 (631) 857-4734 ›

Text Message
Thu, May 19, 7:47 AM

Hey James,
    It's Jack from Omega, Get me over the business bank statements for February, March, April, May month to date to Jack@omegacapfund.com. Once those hit my inbox I'll have the proposals generated within 2 hours. Base me on the merit of my offers, I know you're going to be nothing less than impressed.

Fri, May 20, 9:16 AM

Hey James,
    It's Jack from Omega. I have absolutely no desire to chase you down, all I need from you are statements for February, March April, May month to date. Sometime between now and Monday morning send me the statements and Month to date and I'll have it underwritten with offers out in front of you by Lunch Monday. We move fast in this industry, if you aren't really

Text Message

7:46




+1 (631) 857-4734 ›

over the business bank
statements for February, March,
April, May month to date to
Jack@omegacapfund.com. Once
those hit my inbox I'll have the
proposals generated within 2
hours. Base me on the merit of
my offers, I know you're going to
be nothing less than impressed.

Fri, May 20, 9:16 AM

Hey James,
    It's Jack from Omega. I have
absolutely no desire to chase
you down, all I need from you are
statements for February, March
April, May month to date.
Sometime between now and
Monday morning send me the
statements and Month to date
and I'll have it underwritten with
offers out in front of you by
Lunch Monday. We move fast in
this industry, if you aren't really
trying to get  the 75k for the
truck just let me know and we
can revisit this when you actually
need it.



# EXHIBIT 5

7:46

+1 (848) 248-3345 ›

iMessage
Fri, May 27, 7:24 AM

Hey this is Jack from Omega, following up for the business bank statements for February, March, April, May month to date.

Once those hit my inbox (jack@omegacapfund.com) I'll get you into underwriting. It'll take roughly 2 hours to get a proposal in front of you that I know you're going to be nothing less than impressed with.

7:24 AM

James I'm not trying to waste my time here, are you still looking for the 75k?

7:49 AM

The sender is not in your contact list.

**Report Junk**



iMessage

# EXHIBIT 6

 Gmail

**Jamie Shelton <jeshelton595@gmail.com>**

---

## Do-Not-Call Policy
1 message

---

**Jamie Shelton** <jeshelton595@gmail.com>
To: info@omegacapfund.com

Sun, Jun 5, 2022 at 4:16 PM

Hello,

Please provide me with a copy of your company's Do-Not-Call Policy. Thank you.

# EXHIBIT 7

9/15/22, 1:08 PM
Case 3:22-cv-00202-FM Document 4 Filed 09/15/22 Page 37 of 38
Gmail - Re: Direct Lender here for Business Funding....... Even if you were recently funded I can and WILL get you the funding yo…

 Gmail

**Jamie Shelton <jeshelton595@gmail.com>**

___

## Re: Direct Lender here for Business Funding....... Even If you were recently funded I can and WILL get you the funding you need for your business
1 message

___

**Sedrick Ambrose** <underwriting@24hrfund.com>                    Sat, May 14, 2022 at 2:23 PM
To: jeshelton595@gmail.com

Should I stop bothering you?

On Thursday, May 12, 2022 at 5:58 PM, Sedrick Ambrose <underwriting@24hrfund.com> wrote:
I'm sure you're busy, but if you could respond to my email below, I can cross this off my list.

On Wednesday, May 11, 2022 at 6:54 PM, Sedrick Ambrose <underwriting@24hrfund.com> wrote:
I've reached out a couple times, but I haven't heard back. I'd appreciate a response to my email below.

On Monday, May 9, 2022 at 3:23 PM, Sedrick Ambrose <underwriting@24hrfund.com> wrote:
Just making sure you saw this.

On Sunday, May 8, 2022 at 2:44 PM, Sedrick Ambrose <underwriting@24hrfund.com> wrote:
Even if you were funded recently, I can and will buy the loan at a lower cost. If you're in need of funding for your business. I am a DIRECT LENDER! We own 4
lending platforms outright and I have access to 80 additional banks. I fund in-house within 8 hours. NO BROKERS OR FEE'S! NO LIES!!!!!
Complete the following Application and receive the terms you deserve.

-Bridge loans 2-24 months
-No fees deducted after the funds are deposited (no brokers needed)
-Term loans up to 25 years 2.7% above prime
-Lines of credit
-TRUE consolidations
-Commercial loans
-Equipment Financing
-SBA
-Merchant Cash Advances


      If you would like to be proactive, please complete the application here online and return the last 4 months business bank statements.
*I will pledge to you, in advance, that my rates and terms will be the best in the industry. We're a total financial warehouse with every single financial option available for business owners.*

Upon receiving that information, I will immediately activate your firm approvals.
As soon as I have options for you, I will give you a call to discuss.
Usually within 3 or 4 hours.....

  application here online

--

## Sedrick Ambroise

Managing Director/ Lead Underwriter

## Omega Capital Funding

www.omegacapfund.com
Ca 1-877-282-1214 – Toll Free
Ca 1-631-714-6802 – Main
Ca 1-631-730-8115 - Fax

You may unsubscribe to stop receiving our emails.